The opinion was delivered at the March term, 1850.
Shaw, C. J.
The plaintiff, a colored child of five years oi age, has commenced this action, by her father and next friend, against the city of Boston, upon the statute of 1845, c. 214, which provides, that any child unlawfully excluded from public school instruction, in this commonwealth, shall recover damages therefor, in an action against the city or town, by which such public school instruction is supported. The question therefore is, whether, upon the facts agreed, the plaintiff has been unlawfully excluded from such instruction.
By the agreed statement of facts, it appears, that the defendants support a class of schools called primary schools, to the number of about one hundred and sixty, designed for the instruction of children of both sexes, who. are between the ages *205 of four and seven years. Two of these schools are appropriated by the primary school committee, having charge of that class of schools, to the exclusive instruction of colored children, and the residue to the exclusive instruction of white children.
The plaintiff, by her father, took proper measures to obtain admission into one of these schools appropriated to white children, but pursuant to the regulations of the committee, and in conformity therewith, she was not admitted. Either of the schools appropriated to colored children was open to her; the nearest of which was about a fifth of a mile or seventy rods more distant from her father’s house than the nearest primary school. It further appears, by the facts agreed, that the committee having charge of that class of schools had, a short time previously to the plaintiff’s application, adopted a resolution, upon a report of a committee, that in the opinion of that board, the continuance of the separate schools for colored children, and the regular attendance of all such children upon the schools, is not only legal and just, but is best adapted to promote the instruction of that class of the population.
The present case does not involve any question in regard to the legality of the Smith school, which is a school of another class, designed for colored children more advanced in age and proficiency; though much of the argument, affecting the legality of the separate primary schools, affects in like manner that school. But the question here is confined to the primary schools alone. The plaintiff had access to a school, set apart for colored children, as well conducted in all respects, and as well fitted, in point of capacity and qualification of the instructors, to advance the education of children under seven years old, as the other primary schools; the objection is, that the schools thus open to the plaintiff are exclusively appropriated to colored children, and are at a greater distance from her home. Under these circumstances, has the plaintiff been unlawfully excluded from public school instruction ? Upon the best consideration we have been able to give the subject, the court are all of opinion that she has not.
It will be considered, that this is a question of power, or of *206 the legal authority of the committee intrusted by the city with this department of public instruction; because, if they.have the legal authority, the expediency of exercising it in any particular way is exclusively with them.
The great principle, advanced by the learned and eloquent advocate of the plaintiff, is, that by the constitution and laws of Massachusetts, all persons without distinction of age or sex, birth or color, origin or condition, are equal before the' law. This, as a broad general principle, such as ought to appear in a declaration of rights, is perfectly sound; it is not only expressed in terms, but pervades and animates the whole spirit of our constitution of free government. But, when this great principle comes to be applied to the actual and various conditions of persons in society, it will not warrant the assertion, that men and women are legally clothed with the same civil and political powers, and that children and adults are legally to have the same functions and be subject to the same treatment; but only that the rights of all, as they are settled and regulated by law, are equally entitled to the paternal consideration and protection of the law, for their maintenance and security. What those rights are, to which individuals, in the infinite variety of circumstances by which they are surrounded in society, are entitled, must depend on laws adapted to their respective relations and conditions.
Conceding, therefore, in the fullest manner, that colored persons, the descendants of Africans, are entitled by law, in this commonwealth, to equal rights, constitutional and political, civil and social, the question then arises, whether the regula tian in question, which provides separate schools for colored children, is a violation of any of these rights.
Legal rights must, after all, depend upon the provisions of law; certainly all those rights of individuals which can be asserced and maintained in any judicial tribunal. The proper province of a declaration of rights and constitution of government, after directing its form, regulating its organization and the distribution of its powers, is to declare great principles and fundamental truths, to influence and direct the judgment and conscience of legislators in making laws, rather than to limit *207 and control them, by directing what precise laws they shall make. The provision, that it shall be the duty of legislatures and magistrates to cherish the interests of literature and the sciences, especially the university at Cambridge, public schools, and grammar schools, in the towns, is precisely of this character. Had the legislature failed to comply with this injunction, and neglected to provide public schools in the towns, or should they so far fail in their duty as to repeal all laws on the subject, and leave all education to depend on private means, strong and explicit as the direction of the constitution is, it would afford no remedy or redress to the thousands of the rising generation, who now depend on these schools to afford them a most valuable education, and an introduction to useful life.
We must then resort to the law, to ascertain what are the rights of individuals, in regard to the schools. By the Rev. Sts. c. 23, the general system is provided for. This chapter directs what money shall be raised in different towns, according to their population; provides for a power of dividing towns into school districts, leaving it however at the option of the inhabitants to divide the towns into districts, or to administer the system and provide schools, without such division. The latter course has, it is believed, been constantly adopted in Boston, without forming the territory into districts.
The statute, after directing what length of time schools shall be kept in towns of different numbers of inhabitants and iamilies, provides (§ 10) that the inhabitants shall annually choose, by ballot, a school committee, who shall have the general charge and superintendence of all the public schools in siTih towns. There being no specific direction how schools shall be organized; how many schools shall be kept; what shall be the qualifications for admission to the schools; the age at which children may enter; the age to which they may continue ; these must all be regulated by the committee, under their power of general superintendence.
There is, indeed, a provision (§§ 5 and 6,) that towns may and in some cases must provide a high school and classical schoof for the benefit of all the inhabitants. It is obvious *208 how this clause was introduced; it was to distinguish such classical and high schools, in towms districted, from the district schools. These schools being of a higher character, and designed for pupils of more advanced age and greater proficiency, were intended for the benefit !of the whole of the town, and not of particular districts. Still it depends upon the committee, to prescribe the qualifications, and make all the reasonable rules, for organizing such schools and regulating and conducting them
The power of general superintendence vests a plenary authority in the committee to arrange, classify, and distribute pupils, in such a manner as they think best adapted to theii general proficiency and welfare. If it is thought expedient to provide for very young children, it may be, that such schools may be kept exclusively by female teachers, quite adequate to their instruction, and yet whose services maybe obtained at a cost much lower than that of more highly-qualified male instructors. So if they should judge it expedient to have a grade of schools for children from seven to ten, and another for those from ten to fourteen, it would seem to be within their authority to establish such schools. So to separate male and female pupils into different schools. It has been found necessary, that is to say, highly expedient, at times, to establish special schools for poor and neglected children, who have passed the age of seven, and have become too old to attend the primary school, and yet have not acquired the rudiments of learning, to enable them to enter the ordinary schools. If a class of youth, of one or both sexes, is found in that condition, and it is expedient to organize them into a separate school, to receive the special training, adapted to their condition, it seems to be within the power of the superintending committee, to provide for the organization of such special school.
A somewhat more specific rule, perhaps, on these subjects, might be beneficially provided by the legislature ; but yet, it would probably be quite impracticable to make full and precise laws for this purpose,' on account of the different condition of society in different towns. In towns of a large terr *209 tory, over which the inhabitants are thinly settled, an arrangement or classification going far into detail, providing different schools for pupils of different ages, of each sex, and the like, would require the pupils to go such long distances from their homes to the schools, that it would be quite unreasonable. But in Boston, where more than one hundred thousand inhabitants live within a space so small, that it would be scarcely an inconvenience to require a boy of good health to traverse daily the whole extent of it, a system of distribution and classification may be adopted and carried into effect, which may be useful and beneficial in its influence on the character of the schools, and in its adaptation to the improvement and advancement of the great purpose of education, and at the same time practicable and reasonable in its operation.
In the absence of special legislation on this subject, the law has vested the power in the committee to regulate the system of distribution and classification ; and when this power is reasonably exercised, without being abused or perverted by color-able pretences, the decision of the committee must be deemed conclusive. The committee, apparently upon great deliberation, have come to the conclusion, that the good of both classes of schools will be best promoted, by maintaining the separate primary schools for colored and for white children, and we can perceive no ground to doubt, that this is the honest result of their experience and judgment.
It is urged, that this maintenance of separate schools tends to deepen and perpetuate the odious distinction of caste, founded in a deep-rooted prejudice in public opinion. This prejudice, if it exists, is not created by law, and probably cannot be changed by law. Whether this distinction and prejudice, existing in the opinion and feelings of the community, would not be as effectually fostered by compelling colored and white children to associate together in the same schools, may well be doubted ; at all events, it is a fair and proper question for the committee to consider and decide upon, having in view the best interests of both classes of children placed under their superintendence, and we cannot say, that their decision upon it is not founded on just grounds of reason and *210 experience, and in the results of a discriminating and honest judgment.
The increased distance, to which the plaintiff was obliged to go to school from her father’s house, is not such, in our opinion, as to render the regulation in question unreasonable, still less illegal.
On the whole the court are of opinion, that upon the facts stated, the action cannot be maintained.

Plaintiff nonsuit.